IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARYL A. WEST, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action  MJM-22-1685 |
| POLICE OFFICER POWERS, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Daryl A West ("Plaintiff") brought federal claims under 42 U.S.C. § 1983 and various Maryland state law claims against Police Officers Powers and Kemmerer ("Defendants"), individually and in their capacities as police officers with Baltimore County Police Department.[1] Plaintiff alleges that he was injured during an encounter with Defendants on July 10, 2019, in a parking lot in Randallstown, Maryland, after the officers were dispatched following a reported theft nearby. The Complaint includes seven counts:

(1) Count I: 42 U.S.C. § 1983 claim for violation of the Fourth and Fourteenth Amendments (unreasonable search and seizure), against Powers and Kemmerer;

(2) Count II: 42 U.S.C. § 1983 claim for violation of the Fourth and Fourteenth Amendments (use of excessive force), against Powers;

(3) Count III: Battery, against Powers and Kemmerer;

(4) Count IV: False Arrest, against Powers and Kemmerer;

(5) Count V: False Imprisonment, against Powers and Kemmerer;

(6) Count VI: Violations of Article 24 of the Maryland Declaration of Rights, against Powers and Kemmerer; and

---

[1] The parties have consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF 13).

>   (7) Count VII: Violations of Article 26 of the Maryland Declaration of Rights, against Powers and Kemmerer.

Defendants move for pre-discovery summary judgment on all counts. (ECF 15). The Court has reviewed Defendants' memorandum in support of the motion, Plaintiff's memorandum in opposition, Defendants' reply memorandum, and documents attached to the memoranda. A hearing on the motion is not necessary. L.R. 105.6. For the reasons explained below, Defendants' motion for summary judgment is DENIED.[2]

## I.     Factual Background

This case stems from an encounter between Plaintiff and Defendants on July 10, 2019, in a parking lot adjacent to a Home Depot store in Randallstown, Maryland. (Compl. ¶ 1). At the time of the incident, Defendants were police officers employed by Baltimore County Police Department. (Compl. ¶¶ 6, 9). The incident was partially captured by Powers's body-worn camera ("BWC"), and the video recording was submitted by both parties. (ECF 15-3, ECF 16-2, "Powers BWC"). A portion of the Statement of Probable Cause authored and attested to by Kemmerer ("PC Statement") was also submitted. (ECF 15-2, ECF 16-1).

On July 10, 2019, around 1:12 p.m., Defendants were dispatched to a Home Depot store located in Randallstown, Maryland for "a call of a shoplifter." (PC Statement at 1). "The comments on the call advised that a black male approximately 40 years in age [and] wearing a white shirt with green shorts just left the location with 2 Rigid power tools with an approximate value of $700. . . ." (*Id.*).

The BWC footage shows Powers's patrol car, from inside the vehicle, moving through a parking lot, pulling through parking lanes, and finally approaching Plaintiff. It appears that

---

[2] Defendants have also filed an unopposed motion for leave to file physical exhibit (ECF 14), which will be granted.

Plaintiff is wearing a pair of light color shorts. Plaintiff is walking in the parking lot with his left hand inside the left pocket of his shorts and his right hand out of the right pocket. (Powers BWC at 00:12-00:20). Plaintiff stops walking as the patrol car pulls in front of him, and, with a hand gesture, Powers motions Plaintiff to his patrol car. (*Id*. At 00:17). Powers exits the patrol car and walks toward Plaintiff, continuing to make gestures to him, and Plaintiff now has both hands in his pockets. (*Id*. at 00:22–30). The BWC footage has no sound at this point, but it appears that Plaintiff and Powers are conversing.

The sound begins during this initial encounter between Plaintiff and Powers. Powers asks Plaintiff to put his hands on the patrol car. (*Id*. at 00:32). As Plaintiff moves his body to his left, away from Powers, Powers grabs hold of the right back side of Plaintiff's shirt and yanks him back so that Plaintiff staggers toward the patrol car. (*Id*. at 00:32–33). At this point, both of Plaintiff's hands can be seen outside his pockets. (*Id*.) Powers turns Plaintiff around to face the patrol car with his left hand holding the back of Plaintiff's neck and his right hand around Plaintiff's throat briefly. (*Id*. at 00:35–38). Plaintiff can be heard saying, "I did not steal no tools." (*Id*. At 00:36–38). Powers says, "Turn around." (*Id*.) With his right hand grabbing Plaintiff's shirt near the left side of Plaintiff's neck and holding Plaintiff's head down, Powers turns Plaintiff around so the latter is pressed against the hood of the patrol car. Powers then instructs Plaintiff twice, "Put your hands behind your back." (*Id*. at 00:42–46). Plaintiff's arms and hands are not visible in this portion of the footage. Plaintiff again says, "I did not steal no tools." Powers then grabs Plaintiff's shirt near his left shoulder using his left hand and uses his right fist to strike Plaintiff three times on the left side of the head. Plaintiff falls to the ground with his back on the pavement and both arms sprawled out. (*Id*. at 00:47–50).

As Plaintiff moves forward in a gesture to rise from the ground, Powers twice more tells Plaintiff to put his hands behind his back. (*Id*. at 00:51-57). Plaintiff can be heard saying, "Okay, buddy, just let me get up," (*id*. at 01:05–08), and, "I'm gonna give you the money" (*Id*. at 01:10–11). Plaintiff sits on the ground with his left wrist held by Powers's left hand and his right-side neck and head pressed against the door of the patrol car by Powers's right elbow and forearm. Plaintiff again says, "Let me get up," to which Powers responds, "Nope." (*Id*. at 01:12–25). Powers is panting, and Plaintiff can be heard saying, "…give the man's money back," (*Id*. at 01:34–36) and, "…you gonna break my neck." (*Id*. at 01:37–38). Powers handcuffs Plaintiff's left wrist. (*Id*. at 01:51–01:53.) Plaintiff says, "I was gonna give him his other $100 back. Can I do that?" (*Id*. at 02:01–02:04).

Shortly thereafter, Kemmerer arrives on the scene in his police vehicle. (*Id*. at 02:07). Kemmerer approaches Plaintiff and Powers and puts his left hand on Plaintiff's shoulder and neck and uses his right hand to pull Plaintiff's right arm from underneath Powers's patrol car. Then, Kemmerer moves Plaintiff's right arm behind his back to be handcuffed, while telling Plaintiff to put his hands behind his back, and rolls Plaintiff onto his stomach. (*Id*. at 2:24–28). With Kemmerer's assistance, Powers handcuffs Plaintiff's right wrist while Plaintiff lies face down on the ground. (*Id*. at 02:36–38). Plaintiff can be seen lying on his right side and eventually sitting on the ground. Another officer[3] arrives on the scene, and Powers directs her to retrieve tools that were in front of a nearby business establishment. (*Id*. at 03:22–35).

Powers continues panting and checking his hands. (*Id*. at 03:40–04:20). He says to Plaintiff, "You weren't even going to go to jail," and the two continue to exchange words. (*Id*. at 04:26–28). Powers says, "You weren't going to go to jail. I was gonna give you—I was going to let you go.

---

[3] This person appears to be Officer Madden. (PC Statement at 2).

4

You would've went to court." (*Id*. at 04:33–35). Plaintiff says, "I'll give him his damn money back," and Powers responds, "It's too late now." (*Id*. at 04:38–41). Powers continues panting, states that he thinks he broke his hand, and then requests an ambulance for himself. (*Id*. at 05:00–12).

According to Kemmerer's PC Statement,

> Upon [Kemmerer's] arrival, [he] observed [Powers] standing over [Plaintiff], who was lying against the police car with part of his body tucked under the driver's side door area. [Powers] was repeatedly telling [Plaintiff] to stop resisting and placed his other hand behind his back. [Powers] was only able to get one hand into handcuffs. [Plaintiff] has been tucked under the side of his police vehicle. At this point [Kemmerer] grabbed [Plaintiff's] right arm and placed it behind his back. [Plaintiff] was then placed under arrest without further incident.

(PC Statement at 3).

Following his arrest, Plaintiff was transported to Northwest Hospital. (ECF 16-3). Plaintiff complained of "left temple pain accompanied by blurry vision" and "right elbow pain." (*Id.* at 12). Plaintiff was documented to have a "little laceration" to his right elbow and "no defomity [*sic*] to [his] head," and was diagnosed with concussion and elbow abrasion. (*Id.* at 12, 18). After the medical visit, Plaintiff was transported to Baltimore County Police Department's Second Precinct for processing. (PC Statement at 3). Plaintiff was charged with (1) theft ($100 to under $1500) and (2) resist/interfere with arrest.[4] (ECF 16-4). On September 18, 2019, Plaintiff stood trial in the District Court of Maryland for Baltimore County on the two charges.[5] (*Id*.) A *nolle prosequi* was entered on both charges. (*Id*.) Plaintiff filed this lawsuit on July 8, 2022.

---

[4] "The parties appear to agree that any crimes that Plaintiff had committed here were not felonies." (Defs.' Reply at 1, n.1).

[5] Plaintiff alleges that he "was incarcerated for approximately three (3) months for his criminal charges." (Compl. ¶ 23).

In response to Defendants' pre-discovery summary judgment motion, Plaintiff's counsel attached a Fed. R. Civ. P. 56(d) declaration to Plaintiff's opposition brief. (ECF 16-5). Counsel states in the declaration that "Plaintiff cannot properly oppose Defendant's Motion for Summary Judgement without an opportunity to conduct pretrial discovery." (Spicer Decl. ¶ 16). Counsel explains that "Plaintiff does not have sufficient information to properly address Defendants' assertions that they [had] reasonable articulable suspicion to stop and detain" Plaintiff and "had probable cause to arrest Plaintiff on July 10th, 2019[,] as this evidence is within the exclusive control of the Defendants." (Spicer Decl. ¶¶ 9, 10). Plaintiff requests "the opportunity to obtain pretrial discovery from Defendants[,] who supposedly have within their possession, custody, and/or control the evidence that allegedly serves the basis of their reasonable articulable suspicion and probable cause in this case." (Spicer Decl. ¶ 11). In discovery, Plaintiff would, among other things, seek to depose Defendants. (Spicer Decl. ¶ 14).

## II.     **Legal Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant a party's summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587, but the court is not to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249; *see also Wilson v. Prince George's Cty.*, 893 F.3d 213, 218–19 (4th Cir. 2018); *Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). In the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

Here, Defendants seek summary judgment before the parties have had an opportunity to engage in discovery. Courts have stated that "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). Therefore, "[i]n general, summary judgment should only be granted 'after adequate time for discovery.'" *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A non-moving party that lacks material facts necessary to oppose a summary judgment motion may file an "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The court may defer considering the summary judgment motion, or deny it, to "allow time to obtain affidavits or declarations or to take discovery," or "issue any other appropriate order." *Id.* Rule 56(d) requests for additional discovery are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. *Greater Balt. Ctr. for Pregnancy*

7

*Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 281 (4th Cir.2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir.2010)). A non-moving party's Rule 56(d) request is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

### III. Analysis

The Court finds that it would not be appropriate to grant summary judgment in favor of Defendants at this time. Viewing the facts in the light most favorable to Plaintiff, Defendants fail to demonstrate that there is no genuine dispute of material fact as to (1) whether probable cause supported Plaintiff's arrest at the time, according to the PC Statement, Plaintiff placed under arrest, and relatedly, whether the arrest was unlawful under Maryland law; and (2) whether Powers's use of force was excessive. The Court finds that Plaintiff is entitled to proceed to discovery on these issues.

A.  Section 1983 Claims

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, subjects the plaintiff "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

"To prevail under 42 U.S.C. § 1983, a plaintiff must show, first, that he was deprived of a

right secured by the constitution or laws of the United States, and second, that the defendant acted under color of state law." *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). Section 1983 also requires a showing of personal fault based upon a defendant's own conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). Thus, there is no *respondeat superior* liability under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

B. Unreasonable Seizure

The Fourth Amendment to the United States Constitution, made applicable to the States through the adoption of the Fourteenth Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV; *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961). A "seizure" under the Fourth Amendment occurs when an officer restrains the liberty of a citizen "by means of physical force or show of authority[.]" *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 460–61 (4th Cir. 2013) (quoting *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012)). Both arrests and brief investigative detentions (commonly known as *Terry* stops) constitute Fourth Amendment seizures,

9

but they "represent[] differing degrees of restraint and, accordingly, require[] differing levels of justification." *Id.* at 460 (citing *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002)).

An arrest "must be supported by probable cause." *Id.* at 460–61 (4th Cir. 2013). "Probable cause," for Fourth Amendment purposes, means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (quoting *Michigan v. De Fillippo*, 443 U.S. 31, 37 (1979)). "Probable cause requires more than bare suspicion but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir.1998). It "is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998)). In *Maryland v. Pringle*, 540 U.S. 366 (2003), the U.S. Supreme Court stated:

> [T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.
>
> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized[.]

*Id*. at 370–71 (citations and quotations marks omitted); *see also Illinois v. Gates*, 462 U.S. 213 (1983); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010).

10

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause justifies a warrantless arrest if "at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" the arrestee committed an offense. *Beck v. Ohio,* 379 U.S. 89, 91 (1964), *quoted in Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016) (quoting *Pritchett*, 973 F.2d at 314). A court will examine the events leading up to the arrest, and then decide whether these facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Pringle*, 540 U.S. at 371.

A brief investigative detention, or *Terry* stop, requires "less than probable cause[.]" *Wingate v. Fulford*, 987 F.3d 299, 305 (4th Cir.), *as amended* (Feb. 5, 2021), *cert. denied*, 142 S. Ct. 89 (2021), and *cert. denied*, 142 S. Ct. 89 (2021) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "[L]aw enforcement need only reasonable, articulable, and particularized suspicion that someone is engaged in criminal activity to justify these brief interactions." *Id.* (citing *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997)).

Defendants rely primarily upon Kemmerer's PC Statement and Powers BWC footage to argue that Plaintiff's arrest was justified by probable cause to believe that Plaintiff committed the offenses of theft and resisting, hindering, or obstructing an officer. According to the PC Statement, Plaintiff was arrested following the altercation between Plaintiff and Powers and once Kemmerer arrived on the scene and handcuffed Plaintiff. To determine whether probable cause existed at that

11

time, the Court must consider what conduct of Plaintiff was known to Defendants and "the contours of the offense[s] thought to be committed by that conduct." *Graham*, 831 F.3d at 184.

The only competent evidence of what Powers knew at the purported time of arrest is what may be discerned from review of the footage from his BWC. This footage and other records provided by Defendants indicate that Powers was aware of a report of shoplifting by a black male in his 40 years wearing a white shirt and green shorts and that this suspect left the store on foot. The footage does not include sound at the time Powers initiates a conversation with Plaintiff upon approaching Plaintiff in his patrol car. The sound begins playing just before Powers directs Plaintiff to place his hands on the patrol car. Plaintiff then makes a movement away from Powers, at which point Powers grabs Plaintiff and a physical altercation ensues. During the altercation, the view contained within frame of the video is limited to the area surrounding Plaintiff's head and does not show the rest of his body. Plaintiff denies stealing tools but, after being struck in the head by Powers's fists, he makes statements about giving Powers "the money" and "giv[ing] the man's money back." Once Kemmerer arrives, he assists Powers in securing Plaintiff. According to the PC Statement, this is the point at which Plaintiff was under arrest. Powers subsequently directs another officer to retrieve the tools from a nearby location.

Based on this limited record, the Court cannot conclude as a matter of law that Powers had probable cause to believe that Plaintiff has committed any theft at the time he first approached Plaintiff. Although Plaintiff, in at least some respects, matched the description of the suspected shoplifter, this limited information does not rise to the level of probable cause to believe that Plaintiff committed any theft. It appears from the BWC footage that Powers was aware of the location of the allegedly stolen merchandise at the time he approached Plaintiff, but Defendants

have failed to present any competent evidence of what Powers knew or observed before he approached Plaintiff. The PC Statement includes a narrative purporting to describe what Powers observed before he approached Plaintiff, but this statement was completed and attested to by Kemmerer—not Powers.

Defendants argue that Powers at least had reasonable, articulable suspicion that Plaintiff had committed the theft, which justified his effort to detain Plaintiff. Even assuming that is true, this level of suspicion was not sufficient to establish the probable cause necessary to justify the arrest that subsequently occurred after Kemmerer arrived.

Defendants further argue that, even if Powers lacked probable cause as to the theft, he had probable cause that Plaintiff committed the offense of resisting, hindering, or obstructing an officer once the physical altercation between the two of them ensued. In Maryland, resisting, hindering, or obstructing an officer of the law in the performance of his duties constitutes an offense at common law. *Busch v. State*, 426 A.2d 954, 957 (Md. 1981) (citing *Roddy v. Finnegan*, 43 Md. 490, 505 (1876)). An arrest of the accused "is not essential to the offense of resisting, hindering, or obstructing an officer in the performance of his duties." [6] *Id*. at 958. Maryland courts use "a four-part test for analyzing the offense of obstructing and hindering a police officer in the performance of his duty":

> (1) A police officer engaged in the performance of a duty;
>
> (2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;
>
> (3) Knowledge by the accused of facts comprising element (1); and

---

[6] "Resisting arrest constitutes a different offense at common law", which "ordinarily requires resistance to a lawful arrest made by an officer of the law in the performance of his official duties." *Busch*, 426 A.2d at 957 (citation omitted). "Accordingly, in Maryland, a lawful arrest ordinarily is essential to the offense of resisting arrest." *Id*.

> (4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).

*Titus v. State*, 32 A.3d 44, 51 (Md. 2011) (citing *Cover v. State*, 466 A.2d 1276 (Md. 1983)).

The Court finds that the BWC footage alone is insufficient to demonstrate that Powers had probable cause as to this offense. First, although Plaintiff can be observed making a movement away from Powers once Powers directs him to place his hands on the patrol car, it is not clear from the BWC footage that Plaintiff, in making this movement, was attempting to flee or otherwise hinder Powers's investigative efforts. Second, although it appears from the BWC footage that a physical altercation then occurred between the two men and Powers shouted commands at Plaintiff, it is not obvious from the footage that Plaintiff was actively resisting. The Court notes that Defendants have not offered any sworn statement from Powers attesting to any efforts at flight or active resistance by Plaintiff. The limited evidentiary record available at this time is simply insufficient for the Court to conclude that Powers's arrest of Plaintiff was supported by probable cause.

It appears from the BWC footage that Powers was aware of the location of the allegedly stolen merchandise at the time he approached Plaintiff, but, again, Defendants have not presented any competent evidence of exactly what Powers knew or observed before he approached Plaintiff. And again, the narrative in the PC Statement purporting to describe what Powers observed before he approached Plaintiff does not suffice because it is not, on its face, a statement that can be attributed to Powers.

The presently available record is also inadequate to establish that Kemmerer had probable cause to arrest Plaintiff at the time the PC Statement states that Plaintiff was placed under arrest. According to the PC Statement, Kemmerer was dispatched to the Home Deport store based upon the report of shoplifting and received a description of the suspect. Once he arrived at the scene

where Powers detained Plaintiff, according to the PC Statement, Powers "was repeatedly telling [Plaintiff] to stop resisting and place[] his other hand behind his back." (PC Statement at 3). The Court notes that, in the BWC footage, no such instructions can be heard from Powers. Kemmerer assists Powers in securing Plaintiff upon his arrival, and it is at this point, according to the PC Statement, that Plaintiff was under arrest.

The Court cannot conclude, based solely on the foregoing, that Kemmerer had probable cause to believe that Plaintiff has committed any theft or unlawful resistance at the time Plaintiff was arrested. Although Plaintiff, in at least some respects, matched the description of the suspected shoplifter, this limited information does not rise to the level of probable cause to believe that Plaintiff committed any theft. The PC Statement indicates that Kemmerer was not present during the physical altercation between Powers and Plaintiff, and the BWC footage indicates that Kemmerer arrived on the scene after Plaintiff was on the ground. Thus, it appears from the evidence presented that Kemmerer did not directly observe any alleged resistance or hindering by Plaintiff. Moreover, the BWC footage does not reveal Powers conveying any information to Kemmerer about anything he knew or observed to give Kemmerer probable cause to believe that Plaintiff had committed the reported theft or had resisted or hindered Powers prior to the two officers placing Plaintiff under arrest.

For the foregoing reasons, the Court finds that it would be premature to grant summary judgment in favor of Defendants on Plaintiff's § 1983 claim for unreasonable search and seizure (Count I).

C. Excessive Force

The Supreme Court "has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof

to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Still, an officer's use of force must be "objectively reasonable." *Id.* at 397. "[T]he Fourth Amendment prohibition on unreasonable seizures bars police officers from using excessive force to seize a free citizen." *Smith v. Murphy*, 634 F. App'x 914, 916 (4th Cir. 2015) (quoting *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003); *see also Putman v. Harris*, 66 F.4th 181, 186 (4th Cir. 2023) ("[O]fficers can't use excessive force to carry out a seizure.").

"A claim that a police officer employed excessive force is analyzed under the Fourth Amendment under an 'objective reasonableness' standard." *Smith v. Ray*, 781 F.3d 95, 100–01 (4th Cir. 2015). The issue is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. More specifically, "[t]he question is whether a reasonable officer would have determined that the degree of force used was justified by the threat presented[.]" *Smith*, 634 F. App'x at 916. A court is not to apply this standard "mechanically." *Lombardo v. City of St. Louis, Missouri*, 594 U.S. ----, 141 S. Ct. 2239 (2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). "[P]roper application [of the reasonableness standard] requires careful attention to the facts and circumstances of each particular case[.]" *Graham*, 490 U.S. at 396.

"[T]he nature and quality of the intrusion on the individual's Fourth Amendment interests" are to be weighed "against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (internal quotation marks omitted); *see also Graham*, 490 U.S. at 396 ("Determining whether the force used to effect a particular seizure is 'reasonable'" involves a balance of the individual's Fourth Amendment interests against the government's interests.). Specifically, the court must consider "(1) 'the severity of the crime'; (2) 'whether the suspect poses an immediate threat to the safety of the officers or others'; and (3)

'whether he is actively resisting arrest or attempting to evade arrest.'" *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023) (quoting *Graham*, 490 U.S. at 396). In addition to these *Graham* factors, "[c]ourts have also considered the extent of the injury caused by the use of force in determining whether the use of that force was reasonable." *Jones v. Chapman*, Civ. No. ELH-14-2627, 2017 WL 2472220, at *27 (D. Md. June 7, 2017) (citation omitted). Importantly, the court is to "consider the facts at the moment that the challenged force was employed[]" and "view [the force employed] in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Smith*, 781 F.3d at 101 (4th Cir. 2015) (citations omitted). An officer's use of force "must be judged from the perspective of a reasonable officer *on the scene*, rather than with the 20/20 vision of hindsight." *Greenidge v. Ruffin,* 927 F.2d 789, 791 (4th Cir.1991) (quoting *Graham,* 490 U.S. at 396). Moreover, the reasonableness analysis must allow for the fact that police officers are often forced "to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Id*.

Defendants again rely upon Kemmerer's PC Statement and Powers's BWC footage to argue that Powers's use of force was reasonable. As explained in Part III.B *supra*, based on the limited record presently available, it does not appear that Kemmerer witnessed Powers's use of force against Plaintiff, and the PC Statement is not competent evidence of what Powers experienced or observed that might have justified his use of force—specifically, his punching of Plaintiff's head. The BWC footage alone is insufficient to demonstrate that Powers's use of force was reasonable. Although it appears from the footage that Powers shouted commands at Plaintiff during a physical altercation with him, it is not obvious from the footage that Plaintiff was "actively resisting" Powers's effort to detain him. *Graham*, 490 U.S. at 396. Moreover, the "severity of the

17

crime" at issue (a misdemeanor theft) and Plaintiff's conduct (based solely on what can be observed in the BWC footage and without further explanation from Powers) would not suggest that Plaintiff "pose[d] an immediate threat" to anyone's safety. *Id.* For the these reasons, the Court finds that it would be premature to grant summary judgment in favor of Defendants on Plaintiff's § 1983 claim for excessive force (Count II).

### D. Qualified Immunity

Defendants argue that they are entitled to qualified immunity from suit. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (quotations omitted). The doctrine is intended to give "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *see also Hunter*, 502 U.S. at 229 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine whether defendant officials are entitled to qualified immunity, the court must determine "whether the facts viewed in [the plaintiff's] favor make out a violation of his . . .

constitutional rights," and "whether that violated right was clearly established at the time." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson*, 555 U.S. at 231). But courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

For reasons explained in Parts III.B and III.C *supra*, viewing the facts in Plaintiff's favor, the Court cannot conclude, based on the limited evidentiary record, that Defendants did not violate Plaintiff's clearly established rights. The record leaves unclear whether Defendants effected Plaintiff's arrest without probable cause and whether Powers's use of force was excessive, in violation of Plaintiff's Fourth Amendment rights. The Court recognizes that whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation[,]" *Hunter*, 502 U.S. at 227 (1991), but finds that the decision cannot be made on the evidence presented at this time.

    E.  <u>State Law Claims</u>

Summary judgment would also be premature for the remaining state law claims for violations of Articles 24 and 26 of the Maryland Declaration of Rights (Counts VI and VII, respectively), and for battery, false arrest, and false imprisonment (Counts III, IV, and V, respectively).

Article 24 of the Maryland Declaration of Rights protects rights to due process and equal protection of the law, *Town of Easton v. Pub. Serv. Comm'n*, 838 A.2d 1225, 1237 n.11 (Md. 2003), and Article 26 forbids the state from engaging in unreasonable searches and seizures, *Dehn Motor Sales, LLC v. Schultz*, 96 A.3d 221, 237 (Md. 2014). Courts "construe [these] provisions *in pari materia* with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively."

*Wilson v. Detweiler*, Civ. No. BPG-20-869, 2021 WL 3188329, at *5–6 (D. Md. July 28, 2021), *appeal dismissed*, No. 21-1923, 2021 WL 7084934 (4th Cir. Oct. 27, 2021) (citation omitted); *see also Canaj, Inc. v. Baker & Div. Phase III*, 893 A.2d 1067 (Md. 2006); *Carter v. State*, 788 A.2d 646, 652 (Md. 2002). Accordingly, the Court will deny summary judgment on Plaintiff's claims under these provisions for the same reasons summary judgment is denied on Plaintiff's § 1983 claims.

Under Maryland law, the torts of "[f]alse imprisonment, false arrest, and assault and battery 'can only occur when there is no legal authority or justification for the arresting officer's actions.'" *Hines v. French*, 852 A.2d 1047, 1055–56 (Md. Ct. Spec. App. 2004) (quoting *Williams v. Prince George's County*, 685 A.2d 884 (Md. Ct. Spec. App. 1996)), *quoted in Carey v. Wolford*, Civ. No. RDB-22-0782, 2023 WL 3276217, at *4 (D. Md. May 5, 2023). As explained in Parts III.B and III.C *supra*,, the Court cannot conclude as a matter of law that Defendants' seizure of Plaintiff and Powers's use of force against Plaintiff were legally justified. Summary judgment on Plaintiff's false arrest, and false imprisonment would therefore be inappropriate.

## IV.     Conclusion

For the reasons stated above, Defendants' motion for summary judgment (ECF 15) will be DENIED.

A separate Order follows.

September 29, 2023                           /S/
Date                                          Matthew J. Maddox
                                              United States Magistrate Judge